**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

PAULA A. PETTWAY,             *
                                 *
        Plaintiff,    *
vs.                           *
                                 *   **CIVIL ACTION NO. 16-00500-CG-B**
MOBILE COUNTY REVENUE    *
COMMISSIONER,             *
                                 *
        Defendant.    *

## <u>REPORT AND RECOMMENDATION</u>

This case is before the Court on Defendant Mobile County Revenue Commissioner's Motion to Dismiss Plaintiff's Amended Complaint (doc. 15) and Motion to Dismiss Plaintiff's "Performance Evaluation" Claim (doc. 17). The motions, which have been fully briefed and are ripe for resolution, have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned **RECOMMENDS,** for the reasons stated herein, that Defendant's motion seeking the dismissal of Plaintiff's amended complaint (doc. 15) be **granted,** and Defendant's motion to dismiss the performance evaluation claim as beyond the scope of the EEOC charge (doc. 17) be **denied.**

## I.  BACKGROUND FACTS

Plaintiff Paula A. Pettway, who is proceeding *pro se*, initiated this action by filing a complaint under 42 U.S.C. § 1983, alleging discrimination in violation of the Age Discrimination in Employment Act (hereinafter "ADEA"). (Doc. 1).  Pettway sought and was granted leave to proceed without prepayment of fees. (Docs. 2, 3).  Shortly thereafter, Defendant Mobile County Revenue Commissioner filed a motion seeking the dismissal of Pettway's claims on the ground that they were vague, conclusory, and failed to state a claim for relief. (Docs. 6, 7).  Pettway opposed the motion (doc. 10), and upon review, the undersigned, in a report and recommendation dated April 14, 2017, recommended that Defendant's motion be denied without prejudice and that Pettway be given the opportunity to amend her complaint.[1] (Doc. 12).  The undersigned observed that, while Pettway cited the ADEA as the bases for relief, her complaint was wholly bereft of any facts suggesting that she was treated differently from other employees because of her age.  Pettway was directed to file an amended complaint which set forth the factual bases for her claim that she was discriminated against because of her age.  (Id.).

---

[1] The report and recommendation was adopted by the District Judge.  (Doc. 14).

On April 27, 2017, Pettway filed an amended *pro se* complaint. (Doc. 13). In her amended complaint, Pettway alleges discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and the ADEA. (Id. at 1). Liberally construing Pettway's amended *pro se* complaint, she alleges that she was discriminated against due to her sex and age, and was subjected to a hostile work environment for presumably the same reasons. Pettway's factual assertions are summarized as follows:

(1) On December 21, 2015, Plaintiff was told that she had to arrive to work ten minutes early during the weeks that she worked an 8:00 a.m. – 5:00 p.m. shift, even though others seemingly did not have to do so. (Id. at 2). Plaintiff was warned that she would be insubordinate if she failed to report early, but "Mr. Madise" (ostensibly a co-worker) was not given the same rule or warning. (Id.).

(2) On January 4, 2016, Plaintiff was informed that her cash drawer was missing money. Plaintiff contends that, when she initially counted her cash drawer on December 31, 2015, she had at least $20.00 extra, which was confirmed by her supervisor, Quesandra Battles ("Battles"). However, when Plaintiff returned to work on January 4, 2016, she was informed of the missing money and told that she would have to personally reimburse it. (Id. at 2-3). Plaintiff contends that, on several other (non-enumerated) occasions, she would return from lunch and find that her cash drawer was missing money, and that this became such an issue that she stopped taking a lunch break out of fear that her drawer would be short on money. (Id. at 2). Plaintiff contends that she knew Battles "was messing with [her] mind" and these actions made her sick and caused her to loose sleep. (Id.).

(3) On January 6, 2016, Plaintiff was moved to a new desk after her supervisor confronted her about allegations that she spent twenty minutes on a personal call "while taxpayers were in the Lobby." (Id. at 3). Plaintiff was never given the opportunity to defend herself.

(4) On February 3, 15, and 23, 2016, Battles gave Plaintiff "error sheets" for incomplete/erroneous paperwork. (Id. at 4). Plaintiff states that Mr. Madise was often offered the opportunity to correct his paperwork instead of receiving an error sheet. (Id.). Plaintiff also noted that a female coworker did not receive an error sheet for failing to complete "a non-filing affidavit[,]" which Plaintiff contends would have resulted in an error sheet for her had she made the same mistake. (Id.).

(5) On February 16, 2016, Plaintiff states that her "office privileges were terminated" when Battles told her that she could no longer eat at her desk or have electronics at her desk. (Id. at 3). Plaintiff was told that she would have to eat in the break room with the door closed, though others did not have to close the door when using the room. (Id.). Further, when Plaintiff attempted to work through her lunch break, she was told that she could not do so. (Id.). Finally, though Plaintiff was unable to use electronics at her desk, she noticed that Mr. Madise was allowed to play his radio everyday. (Id.).

(6) On April 7, 2016, "Mr. Glenn Ford" observed Plaintiff's performance evaluation with Battles, where she received a "low (satisfactory) performance rating[.]" (Id. at 1). Plaintiff states that having Mr. Ford sit in on her evaluation was humiliating, intimidating, and fostered a hostile work environment. (Id.). Plaintiff also asserts that no one observed Madise's evaluation with Battles. (Id.).

On May 9, 2017, Defendant filed a motion (doc. 15) seeking the dismissal of Pettway's amended complaint, and a

motion (doc. 17) addressing Pettway's performance evaluation claim. According to Defendant, Pettway has failed to allege sufficient information concerning her age or the ages of other co-workers who purportedly were treated more favorably. (Doc. 16). Defendant further argues that none of the alleged actions raised in Pettway's amended complaint constitutes legally actionable "adverse employment actions" sufficient to sustain either an age discrimination or a sex discrimination claim. (Id.). Defendant also contends that Pettway has failed to establish workplace harassment that was severe or pervasive. With respect to Pettway's "Performance Evaluation" claim, Defendant contends that, because Pettway did not file a charge with the EEOC regarding this claim, the claim exceeds the scope of her EEOC charge and, as a result, the claim is not properly before this Court. (Docs. 17, 18).

In her response in opposition, Pettway does not dispute that her "Performance Evaluation" claim was not included in her EEOC charge, but instead contends that she verbally told the EEOC investigator about her performance evaluation claim. (Doc. 20 at 1-2). Pettway further asserts that she also sent a letter to the EEOC requesting that they conduct an investigation into her performance evaluation complaint since Defendant did not address that issue in its response to her EEOC complaint. (Id. at 2). Pettway does not address the

other arguments contained in Defendant's motion seeking the dismissal of her amended complaint.

## II.  __STANDARD OF REVIEW__

As a preliminary matter, the undersigned observes that when considering a pro se litigant's allegations, a court gives them a liberal construction, holding the litigant to a more lenient standard than those of an attorney.  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 595-96, 30 L. Ed. 2d 652 (1972).  However, a court does not have "license . . . to rewrite an otherwise deficient pleading in order to sustain an action."  GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (relying on Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  In addition, a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the

court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc., v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the court is not required to accept a plaintiff's legal conclusions. Iqbal, 556 U.S. at 678 (noting that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Rule 12(b)(6) is read in light of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" See Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555, 127 S. Ct. 1955, 157 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). In Iqbal, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint must state a plausible claim for relief, which

occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. Id. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

Typically, a court reviewing a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the complaint. See Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n. 7 (11th Cir. 2006). If, however, the complaint refers to documents that are central to the case, those documents may be considered part of the pleadings. See Jordan v. Miami-Dade County, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006). Similarly, courts may consider any document attached to a motion to dismiss without treating the motion as one for summary judgment, so long as the plaintiff has referred to the document in its complaint, the document is "central" to the claims, and the authenticity of the document is unchallenged. See Bickley, 461 F.3d at 1329 n. 7; Day v.

<u>Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing <u>Harris</u> <u>v. Ivax Corp.</u>, 182 F.3d 799, 802 n. 2 (11th Cir. 1999)).

In the context of employment discrimination cases, courts routinely consider the EEOC charge when reviewing a motion to dismiss. <u>Chestnut v. Ethan Allen Retail, Inc.</u>, 2013 U.S. Dist. LEXIS 135346, 2013 WL 5290123, at *3 (N.D. Ga. Sept. 20, 2013); <u>Nixon v. United Parcel Serv., Inc.</u>, 2013 U.S. Dist. LEXIS 180129, 2013 WL 6815719 (M.D. Ga. Dec. 24, 2013). While Pettway did not file a copy of her EEOC charge in this case, and did not reference the charge in her complaint, or amended complaint, the Court finds that the charge is central to her case given that a plaintiff must timely file a charge with EEOC in order to proceed on a claim under Title VII or ADEA. <u>See</u> <u>Wilkerson v. Grinnell Corp</u>., 270 F.3d 1314, 1317 (11th Cir. 2001). Therefore, the Court may consider the EEOC charge submitted by Defendant without converting Defendant's motion to dismiss into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### III. <u>ANALYSIS</u>

As noted above, Pettway alleges that she was subjected to harassment and discriminatory treatment in violation of the ADEA and Title VII. The Court turns first to Defendant's argument regarding the scope of Pettway's EEOC charge.

## A. SCOPE OF EEOC CHARGE

Prior to filing a Title VII action in federal court, a plaintiff must file a charge of discrimination with the EEOC and exhaust the administrative process. Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004). Due to the exhaustion requirement, it is well settled that a ""plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."" Id. at 1280 (quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)); see also Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970) (noting that "it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."). However, the Eleventh Circuit has made clear that "the scope of the EEOC should not be strictly interpreted." Sanchez, 431 F. 2d at 465. As a result, if a plaintiff attempts to litigate Title VII claims not enumerated in her EEOC charge, courts will not automatically bar them. Gregory, 355 F.3d at 1280.

When plaintiffs attempt to litigate Title VII claims not discussed in their EEOC charges, courts must determine whether the additional allegations were "like or related to,

or grew out of, the allegations contained in [the] EEOC charge". Id. In other words, "[t]he suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge." Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir. 1997); see also Gregory, 255 F.3d at 1280 (holding that the district court did not err in finding that the plaintiff's retaliation claim was not administratively barred by her failure to mark the retaliation space on the EEOC form); Mason v. George, 24 F. Supp. 3d 1254 (M.D. Ga. 2014)(holding that the plaintiff's age and gender discrimination claims were unexhausted because the plaintiff only mentioned race in his EEOC charge; however, his termination claim was reasonably related to, and could be expected to grow out of, the EEOC's investigation of his two disciplinary write-up claims that were included in his EEOC charge).

Here, Defendant argues that Pettway's claim that she was harassed when Mr. Ford sat in on her performance evaluation with Ms. Battle on April 7, 2016, was not included in her EEOC charge; thus, it should be dismissed as unexhausted, and outside of the scope of her EEOC charge. It is undisputed that Pettway filed a verified EEOC Charge of Discrimination

on April 5, 2016. (Doc. 17-1). In it, Pettway alleged that she was a 58 year old black female, and that she was being harassed by her supervisor, whom she described as black and over 40. Pettway further alleged that she was being harassed, discriminated against and retaliated against because of her age, sex, and religious beliefs. She also contends that she was told to report to work ten minutes earlier on her 8 to 5 weeks, that her desk was moved after a co-worker complained about her, that she was not allowed to correct her assessments, and that the work rules were changed after she moved to the Eight Mile office. (Id.). The undersigned finds that, although Pettway did not include in her EEOC charge any facts regarding the administration of her performance evaluation, or the performance evaluation in particular, it is within the scope of EEOC charge. First, it is reasonably related to the other office harassment alleged in her EEOC charge. Additionally, given that the evaluation meeting occurred a mere two days *after* the filing of Pettway's EEOC charge, it not only occurred during the pendency of the administrative charge, it could reasonably be expected to grow out of an investigation of the other harassment claims contained in her EEOC charge. Accordingly, the performance evaluation claim is not barred.

## B. MOTION TO DISMISS AMENDED COMPLAINT

### 1. DISPARATE TREATMENT

#### a. ADEA

Under the ADEA, it is unlawful for an employer to discharge or otherwise discriminate against an employee who is at least 40 years old on the basis of age. 29 U.S.C. § 623(a). To establish a prima facie case under the ADEA, the plaintiff bears the burden of proving that: (1) she was a member of the protected class (i.e., at least 40 years old at the time of the adverse action); (2) she was subject to an adverse employment decision; (3) the position she sought was filled by a substantially younger person; and (4) she was qualified for the position. See Chapman v. AI Transp., 229 F.3d 1012, 1043 (11th Cir. 2000) (en banc). Age discrimination claims also require that the plaintiff ultimately show that her age was the "but-for" cause of the adverse employment decision. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). However, a plaintiff need not allege facts sufficient to make out a prima facie case in order to survive a motion to dismiss. Davis v. Coca-Cola Bottling Co. Consol., 516 F. 3d 955, 974 (11th Cir. 2008). Rather, the plaintiff "must provide, 'enough factual matter (taken as

true) to suggest' intentional race [or age] discrimination."
Id. (citing Twombly, 127 S. Ct. at 1965).

Pettway has failed to meet her burden in the instant case. While she cites the ADEA as one of her grounds for relief, Pettway's amended complaint, much like her initial complaint, is wholly devoid of any facts suggesting that she was treated differently from other employees due to her age. In her EEOC charge, she lists her age as 58, which places her within a protected group; however, she has offered no facts suggesting that employees outside the protected group were treated more favorably than her, or that the employment practices about which she complains were based on her age. Because Pettway's factual allegations are not sufficient to "nudge[] [her] claim across the line from conceivable to plausible[,]" her age discrimination claims are due to be dismissed." Twombly, 550 U.S. at 570.

### b. TITLE VII

Under Title VII, it is "an unlawful employment practice for an employer to . . . discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of disparate treatment under Title VII, the plaintiff must prove that: "(1) she is a member of a protected class;

(2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999). To prove that she was subjected to an adverse employment action, a plaintiff must show "a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001).

As noted *supra*, at this state of the litigation, Pettway is required to provide "'enough factual matter (taken as true) to suggest' intentional [gender] discrimination." Coca-Cola Bottling Co. Consol, 516 F.3d 974; Uppal v. Hosp. Corp. Am., 482 Fed. Appx. 394, 396 (llth Cir. 2012). Pettway has not asserted that she belongs to a protected class, nor has she listed her gender in either her complaint or amended complaint. However, liberally construing her complaint based on her EEOC charge, Pettway alleges that she is female and, in her amended complaint, she alleges that "Mr. Madise" was treated more favorably than her when: (1) Mr. Ford did not sit in on Mr. Madise's performance evaluation with Ms. Battle, but he sat in on Pettway's performance evaluation with Ms. Battle; (2) Pettway was required to come in ten minutes early, but Mr. Madise was not; (3) Pettway was not

allowed to play her radio, while Ms. Battles and Mr. Madise played their radio every day; and (5) Mr. Madise, "April," and Ms. Graham were permitted to make corrections to their assessment, whereas Pettway was not allowed to make corrections, but was, instead, given an error sheet on February 3, 2016, which affected her performance rating and promotion potential. (Doc. 13).

The undersigned finds that, reviewing the facts in Pettway's amended complaint in the light most favorable to her, there are no facts from which this Court can reasonably infer that the actions of which Pettway complains were due to her sex. For instance, while Pettway complains about loss of radio privileges and being denied the ability to correct assessment sheets, she indicates that Ms. Battle and Mr. Madise continued to play their radio, and that "April," Ms. Graham, and Mr. Madise were allowed to correct their assessment sheets. Pettway's amended complaint is devoid of anything which suggests that she was treated differently on account of her sex. At best, Pettway's factual assertions indicate that other employees, both male and female, enjoyed better treatment than her.

Moreover, Pettway has failed to proffer facts that suggest that any of the actions about which she complains amounted to an adverse employment actions. To establish an

adverse employment action in a Title VII discrimination claim, an employee "must show a serious and material change in the terms, conditions or privileges of employment. An employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis, 245 F.3d at 1239. "Although [Title VII] does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." Id. "[T]he protections of Title VII simply do not extend to everything that makes an employee unhappy." Id. at 1242; see also Perkins v. Kushla Water Dist., 21 F. Supp. 3d 1250, 1263 (S.D. Ala. 2014) (holding that a reassignment in duties did not constitute a material change when it did not affect the plaintiff's job title, pay, or benefits).

Pettway has presented no facts that suggest that any of the above-listed actions resulted in "a serious and material change in the terms, conditions, or privileges of employment." Davis, 245 F.3d at 1239. Indeed, Pettway merely asserts, in a conclusory fashion, that the "error sheet" affected "my performance rating and my promotion potential[,]" and that "I feel that the actions taken against

me have been to segregate and classify me, in that, it deprives me of compensation, privileges of employment and adversely affect [sic] my status as an employee." (Doc. 13 at 4). However, as noted *supra*, Pettway's subjective view of the impact of Defendant's actions is irrelevant. Instead, the Court must examine her amended complaint from the perspective of a reasonable person under similar circumstances. In so doing, the Court cannot conclude that the events described in Pettway's amended complaint constitute adverse actions. For instance, having to arrive to work ten minutes early, having Mr. Ford sit in on her performance evaluation, [2] or being denied the opportunity to play the radio does not come close to establishing a serious and material change in the terms, conditions, or privileges of employment, given the complete absence of any tangible harm. Rather, the actions amount to nothing more than the "normal petty slights [and] minor annoyances" to which many employees are unfortunately subjected, but which are not legally actionable. Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Additionally, Pettway's

---

[2] While Pettway contends that she received a low (satisfactory) performance rating, and that Mr. Ford set in on her performance review, but did not sit in on Mr. Madise's review, she asserts no facts which suggest that her low (satisfactory) performance rating was based on her sex.

conclusory assertion that the error sheet she received on February 3, 2016, "affected [her] performance rating and [her] promotion potential" is pure speculation, given the complete absence of any facts establishing a connection between Pettway's performance rating or promotion potential and the error sheet she received on February 3, 2016. Accordingly, Pettway's sex discrimination claim is due to be dismissed.[3]

## 2. **HOSTILE WORK ENVIRONMENT**

The Supreme Court has held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated," thereby giving rise to a hostile work environment claim. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations and quotations omitted). To plead a claim for hostile work environment, the plaintiff must allege that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) it

---

[3] As noted *supra,* Pettway's assertion that, in addition to Mr. Madise, "April" and "Ms. Graham" were also allowed to correct their assessments (doc. 13 at 4), while Pettway was given an error sheet on February 3, 2016, belies her claim that this action was based on her sex.

was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability. Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010). To be actionable, a plaintiff must allege not just that he or she subjectively believed the environment to be hostile or abusive, but that a reasonable person would perceive it as such. See, e.g., Harris, 510 U.S. at 21-22. When evaluating the objective severity of the harassment, district courts must examine all of the circumstances, which may include such factors such as: the frequency of the discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and whether the conduct unreasonably interfered with the plaintiff's work performance. Id. at 23.

In her amended complaint, Pettway alleges that she was subjected to a hostile work environment as a result of having Mr. Ford sit in on her performance review, which was conducted by Ms. Battles on April 7, 2016. (Doc. 13 at 1). She also recounts instances in which there were discrepancies with her cash box and she was told that she would have to repay the missing amounts. Pettway also contends that she was not allowed to play her radio or use her coffee warmer at

her desk; she was moved to another desk after a coworker reported that she was on the phone for twenty minutes while taxpayers were in the lobby; her supervisor stopped her from eating at her desk and, instead, directed her to eat in the breakroom with the door closed or to go outside and eat; that her supervisor forced her to take a lunch break when she decided not to eat lunch; and that she was directed to arrive ten minutes early on their 8 to 5 weeks. According to Pettway, Mr. Madise arrived at 7:55 on December 22, 2015, and Ms. Battles and Mr. Madise continued to play their radio everyday although she was prevented from doing so. Accepting as true these allegations in Pettway's amended complaint, the undersigned finds that they fail, as a matter or law, to state a hostile work environment claim. Pettway has offered no facts which suggest that any of the actions of which she complains was based on either her age or her sex. Her complaint is also devoid of facts that are, objectively, so severe and pervasive as to alter the terms and conditions of her employment. Thus, she has failed to state a claim upon which relief can be granted for hostile work environment. See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178(10th Cir. 1999) ("Title VII is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'").

**IV. CONCLUSION**

Based on the foregoing, the undersigned **RECOMMENDS** that the Defendant Mobile County Revenue Commissioner's Motion to Dismiss Plaintiff's Amended Complaint (doc. 15) be **GRANTED** and its Motion to Dismiss Plaintiff's "Performance Evaluation" claim as beyond the scope of the EEOC charge (doc. 17) be **DENIED**.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error, if

necessary, "in the interests of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **19th** day of **January, 2018.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE